# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| DEBORAH ALLEN,<br><br>    Plaintiff,<br><br>v.<br><br>WALMART, INC., WAL-MART STORES, EAST, LP, WAL-MART REALTY COMPANY,<br><br>    Defendants. | Civil Action No.<br><br>2:18-cv-164-RWS |

## **ORDER**

This case comes before the Court on Defendants' Motion for Summary Judgment [Dkt. 23]. The Court has reviewed the record, and for the reasons below, the Motion is **GRANTED**.

### Background

In this slip-and-almost-fall case, Plaintiff Deborah Allen claims that Defendant Wal-Mart caused her injury when she slipped on a puddle of clear liquid at its store. Wal-Mart disagrees. It now moves for Summary Judgment, arguing that based on the evidence presented, it cannot be held liable as a matter of law.

The facts—which for the reasons outlined in the discussion below are undisputed—show the following: Ms. Allen was shopping on the cereal aisle at her

local Wal-Mart store when she slipped on something wet. She caught herself on the shopping cart she was holding and didn't fall. No store employees were around, so she called the store and had an employee come look at the spot. There was a small puddle of clear, odorless liquid. She was about halfway down the aisle, a distance she later estimated at 30-40 feet from the aisle entrance. The employee took pictures. The liquid—presumably water, though it cannot be said for sure—was invisible in the pictures.

The cereal aisle cannot be seen from Wal-Mart's video, but the intersecting main aisle can. Ms. Allen entered the cereal aisle at around 6:46 P.M. Some twenty-three minutes before, at approximately 6:23 PM, an employee walked by the cereal aisle, conducting a visual inspection as she passed. She later stated that when she inspected the area, there were "no spills or liquids on the floor." Had there been, she would have removed them, in accordance with the store's safety policies and procedures. Another employee had made a similar inspection eight minutes earlier, at approximately 6:15 PM, and he said the same thing.

## Discussion

### I. Summary Judgment Standard

The standard for summary judgment is well-established. Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if proof of its existence or nonexistence would affect the outcome of the case under controlling substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Id.

Ordinarily, in conducting its review at summary judgment, the court "consider[s] the record and draw all reasonable inferences in the light most favorable to the non-moving party." Blue v. Lopez, 901 F.3d 1352, 1357 (11th Cir. 2018). The court may grant summary judgment only when, after viewing all evidence in the light most favorable to the non-moving party, the court determines that no genuine dispute of material fact exists such the movant is entitled to judgment as a matter of law. Id. at 1360. Summary judgment is improper, however, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Guevara v. NCL (Bahamas) Ltd., 920 F.3d 710, 720 (11th Cir. 2019).

**II. Local Rule 56.1(B)(2)**

The pertinent requirement of Local Rule 56.1 is that the respondent to a summary judgment motion must file a response to the movant's statement of

undisputed facts which sets forth, as to each numbered undisputed fact that the respondent is contesting, "specific citations to evidence (including page or paragraph number)" that support the respondent's version of the facts. LR 56.1(B)(2)(a)(2). In the absence of such specific citations to evidence, the court "will deem each of the movant's facts as admitted." Id.; see also Reese v. Herbert, 527 F.3d 1253, 1267 (11th Cir. 2008). Thus, "the proper course in applying Local Rule 56.1 at the summary judgment stage is for a district court to disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed facts—that yields facts contrary to those listed in the movant's statement." Reese, 527 F.3d at 1268.

The Rule is not a mere formality. Rather, it is considered "both a sanction for the parties and a balm for the district court: the parties are given an incentive to conform to the rule (provided they wish to have their version of the facts considered), and the district court is in any case relieved of the obligation to ferret through the record." Id. It is, indeed, "the only permissible way for [a party] to establish a genuine issue of material fact at that stage." Id.

Here, as Wal-Mart correctly notes in its Reply, Ms. Allen failed to cite to any evidence in her Response to the Statement of Material Facts [Dkt. 30]. Instead, she merely replied with a one-word "Admitted" or "Denied." Therefore, per the

4

terms of Local Rule 56.1(B)(2)(a)(2), the Court deems each of the facts set out by Wal-Mart as admitted.

In any event, the discrepancy is not so great. Ms. Allen admitted to all of the facts set out by Wal-Mart except those related to the inspections. And concerning those inspections, still the distinctions are narrow. Wal-Mart does not contend that either employee entered the cereal aisle where Ms. Allen fell. Instead, it claims that the employees "inspected" the area from the intersecting aisle. This claim is supported by affidavits from the employees. [Dkts. 23-6, 23-7]. Ms. Allen argues in her Response that it is not clear from the video that the employees actually turned to look down the aisle they claimed to inspect. [Dkt. 29 at 6–7]. Because she admitted to Wal-Mart's facts, however, the Court credits the affidavits and finds that the employees did "inspect" the aisle from their vantage point.

Still, even when the facts are deemed admitted, summary judgment does not automatically follow. Instead, "[t]he movant . . . continues to shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact, and the court must satisfy itself that the burden has been satisfactorily discharged." Reese, 527 F.3d at 1268.

That burden is particularly relevant here, because the remaining issues concern the *inferences* to be drawn from the facts, rather than the facts as stated

(which, again, are not in dispute). In particular, Wal-Mart asks the Court to draw two inferences as a matter of law: first, it contends that, because the liquid was clear, the liquid could not have been discovered by a reasonable inspection. Second, it contends that the inspections, which were carried out 31 and 23 minutes before Ms. Allen slipped, were in fact reasonable.

Ms. Allen does not respond to the former contention; and her dispute about the latter centers more on the fact of whether the employees looked rather than the reasonableness of the inspection. Essentially, having admitted to the underlying facts, she does not respond at all to these arguments. So it is particularly appropriate here for the Court to treat the Motion as unopposed, as Reese dictates. See id. (When party has failed to comply with Local Rule 56.1, "the court has before it the functional analog of an unopposed motion for summary judgment."). Still, she retains some protection from the standard—the Court still "draw[s] all reasonable inferences in the light most favorable to the non-moving party." Blue, 901 F.3d at 1357. With that in mind, the Court turns to Wal-Mart's contentions.

### III. Slip-and-Fall Analysis

"To prevail on a slip-and-fall claim, the plaintiff must show: (1) that the premises owner had actual or constructive knowledge of the hazard, and (2) that the plaintiff lacked knowledge of the hazard, despite an exercise of ordinary care,

because of actions or conditions within the owner's control." Keisha v. Dundon, 809 S.E.2d 835, 837 (Ga. Ct. App. 2018). At issue here is the first element concerning the Defendant's knowledge.

As to that element, there is no evidence, nor does Ms. Allen contend, that Wal-Mart had actual knowledge of the hazard. So the Court turns to constructive knowledge, which can be shown in one of two ways:

> A plaintiff may demonstrate a proprietor's constructive knowledge of a hazard by showing that (1) a store employee was in the immediate area of the hazard and could have easily seen the substance or *(2) the foreign substance remained long enough that ordinary diligence by the store employees should have discovered it.*

Thacker v. Wal-Mart Stores E., Inc., 2019 WL 1996698, at *4 (N.D. Ga. Mar. 19, 2019) (citing Johnson v. All Am. Quality Foods, Inc., 798 S.E.2d 274 (Ga. Ct. App. 2017) (emphasis added). It is undisputed that no Wal-Mart employee was in the immediate area. Thus, the pertinent analysis concerns the latter prong—whether the substance remained long enough to be found with ordinary diligence.

In that regard, Wal-Mart raises two reasons for which it contends summary judgment is warranted: the invisible nature of the hazard, and the reasonableness of the inspection. These are addressed in turn below. In considering them, the Court is guided by the practical consideration that the "'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff . . . are generally not

susceptible of summary adjudication." Griffin v. Walmart Supercenter, Inc., 2019 WL 7491505, at *11 (N.D. Ga. Sept. 10, 2019) (citing Robinson v. Kroger Co., 493 S.E.2d 403, 414 (Ga. 1997)).

### A. Clear Nature of the Liquid

Wal-Mart's first argument focuses not so much on the *time* the hazard was present—despite the temporal language evident in the second prong—as with the *nature* of the hazard itself. It argues that because the liquid was clear and effectively invisible (it was presumably water, but the evidence does not say for sure), *no reasonable inspection* could have discovered it, regardless of the amount of time. In so doing, Wal-Mart draws on a line of cases tracing to Chastain v. CF Georgia N. Dekalb L.P., 569 S.E.2d 914, 916 (Ga. Ct. App. 2002), which also involved a plaintiff who slipped on water.

In Chastain, however, the plaintiff said in her deposition that "to see the dribbles of water on the shiny mall floor that caused her to fall, one would have had to bend down and look from a specific angle." Donastorg v. Rainbow USA, Inc., 802 S.E.2d 425, 429 (Ga. Ct. App. 2017) (en banc) (citing Chastain). The hazard could not be seen by standing up and looking from a normal angle. Thus, the court held that constructive knowledge could not be inferred. Chastain, 569 S.E.2d at 916 ("If there is no evidence that the water could have been discovered

during a reasonable inspection, then no inference arises that defendants' failure to discover the defect was the result of any alleged failure to inspect.").[1]

As the Georgia Court of Appeals recently illustrated, the Chastain principle does not reach terribly far, in part because a plaintiff's admissions concerning the visibility of the hazard are still construed in her favor. See Donastorg, 802 S.E.2d at 429. To invoke Chastain, there must be "no causal connection between plaintiff's injury and any alleged inaction by defendants as a matter of law." Id. Thus, summary judgment was not awarded even when a plaintiff said she could not see a pin on the floor even if she were looking at the ground. Id. Or when a stick lay in a lighted parking lot. Samuels v. CBOCS, Inc., 742 S.E.2d 141, 143 (Ga. Ct. App. 2012). Or when a clear liquid—chicken blood mixed with water—was visible from a standing position, particularly when the store was on notice of the risk of such leaks. Food Lion, Inc. v. Walker, 660 S.E.2d 426, 429 (2008).

The margins between Chastain and those cases that distinguish it are often slim, and the facts here present a close call. But the Court is persuaded that the hazard was not immune from discovery. Wal-Mart argues that the puddle was

---

[1] Wal-Mart's citation to Keisha v. Dundon, 809 S.E.2d 835, 838 (Ga. Ct. App. 2018), is not particularly persuasive. There, the hazard was a gas pump that was spewing gas. It had only been doing so for a few seconds, and the plaintiff was aware of it. Meanwhile, the defendant owner's view was blocked by various vehicles. Chastain itself is a much closer analogue, so the court focuses on it and the other cases cited in the discussion.

"invisible" based on the photographs. But contrary to its claim, how the hazard appears in the photographs is not the determinative question. Nowhere in its statement of undisputed facts does Wal-Mart assert that Ms. Allen said the liquid was "invisible." If anything, the record reflects that it could be seen from a normal, standing position, by her and by the manager. Further, the liquid formed a puddle, not isolated droplets, as was the case in Chastain.

In a recent case in this district, Judge Cohen addressed essentially the same issue—a puddle of water in a Wal-Mart store. See Griffin, 2019 WL 7491505, at *10. Tracing the cases following Chastain, he reached the same conclusion:

> The only indication that the water "would have been difficult to see" in an area of the Store that "was well lit" is that the water was clear and had no color or tint and, after Griffin fell, she "noticed water on the floor in a puddle about the size of a small dinner plate." This evidence does not show that, as a matter of law, Walmart lacked constructive knowledge of the puddle of water.

Id. (record citations omitted). The Court finds that the same is true here. Summary judgment is not warranted on this basis.

**B. Reasonableness of the Inspection**

For its second argument, Wal-Mart says it did not have constructive knowledge because its employees carried out reasonable inspections. A defendant's constructive knowledge can be inferred if "there is evidence that the owner lacked a reasonable inspection procedure." Thacker, 2019 WL 1996698,

at *5 (citing Shepard v. Winn Dixie Stores, Inc., 527 S.E.2d 36, 38 (Ga. Ct. App. 1999). To avoid this inference, a defendant moving for summary judgment must show that it had such procedures, and that they were carried out:

> In order to prevail at summary judgment based on lack of constructive knowledge, the owner must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident.

Id. Here, it is undisputed that the Wal-Mart employees inspected the premises by looking at the cereal aisle from the from the intersection at the main aisle twice within approximately half an hour before Ms. Allen's slip. It is also apparent that they did so pursuant to Wal-Mart's policy.[2] The only question, therefore, is whether those inspections were reasonable. If they were, then Wal-Mart prevails.

"The reasonableness of an inspection procedure depends on the nature of the business, the size of the store, and the number of customers." Donastorg, 802

---

[2] Admittedly, the evidence describing the inspection "program" is thin when compared to other cases, even cases involving Wal-Mart. See, e.g., Thacker, 2019 WL 1996698, at *2 (discussing a program of "safety sweeps" and "zoning"); Brown, 2017 WL 386647, at *1 (discussing "safety sweeps" and safety "training meetings"). However, this is not a case where reference to the procedures was completely omitted. See Griffin, 2019 WL 7491505, at *8 ("Nothing in the record indicates what Walmart's inspection procedures were or that it complied with them"). And the procedures briefly alluded to here resemble the ones described in the other cases. Although a bit more description and color might be necessary in a case where the inspection program was a matter of dispute, the Court does not require that Wal-Mart use magic words or jargon to explain their program. The descriptions here suffice in the context of this case.

S.E.2d at 428 (citing Food Lion, 660 S.E.2d at 429). In particular, to be reasonable, the procedures must be "adequate to guard against known or foreseeable dangers at the time of the alleged injuries." Id.

The Court holds that the procedures here—essentially, looking down the aisle from a cross-aisle—are reasonable for Wal-Mart under the circumstances. See Thacker, 2019 WL 1996698, at *2; Brown v. Wal-Mart Stores E., LP, 2017 WL 386647, at *1 (N.D. Ga. Jan. 27, 2017). This is not a case where Wal-Mart was aware of any risk of a particular hazard. See Donastorg, 802 S.E.2d at 428. Under its normal working conditions, Wal-Mart's policy of having its employees look down an aisle for slip hazards was reasonable. Such a program constitutes ordinary diligence; as such, constructive knowledge of a hazard cannot be inferred.

Because the Court cannot infer constructive knowledge, for Ms. Allen to prevail, she would need to affirmatively show that the hazard existed for an unreasonably long time. However, she cannot prove how long it was present. Indeed, she admits as much—she does not know who spilled the liquid or when they did so. And based on the evidence of the inspections, the liquid was there for 23 minutes at most. That is within a range typically held to be reasonable. See Thacker, 2019 WL 1996698, at *6 (summarizing cases granting summary judgment with inspections ranging from 15 – 35 minutes).

Ms. Allen has failed to raise a genuine dispute concerning Wal-Mart's knowledge of the hazard. Accordingly, her claim fails as a matter of law.

**Conclusion**

For the foregoing reasons, Defendant Wal-Mart's Motion for Summary Judgment [Dkt. 23] is **GRANTED**. The Clerk is **DIRECTED** to close the case.

**SO ORDERED** this 16th day of January, 2020.

_____
**RICHARD W. STORY**
United States District Judge